AO 106 (Rev. 04/10) Application for a Search Warrant    AUTHORIZED AND APPROVED/DATE: s/Tiffany Edgmon 04/08/2025

# UNITED STATES DISTRICT COURT
### for the
### Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Isaac Spire, DOB: XX/XX/1985 | ) M-25-209-STE<br>)<br>)<br>) Case No. M-24-<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachement A, which is incorporated by reference herein.

located in the _____ Western _____ District of _____ Oklahoma _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachement B, which is incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(2) | Distribution of Child Pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |

The application is based on these facts:

See the Affidavit of FBI Special Agent Suzanna Prusak, which is incorporated by reference herein.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Susanna Prusak, Special Agent FBI
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:    **Apr 9, 2025**

_____
*Judge's signature*

City and state:   Oklahoma City, Oklahoma

SHON T. ERWIN, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Susanna Prusak, Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), Oklahoma City, Oklahoma, being duly sworn, depose and state as follows:

1.    I have been employed as a SA with the FBI since October 2023, and I am currently assigned to the Oklahoma City Division. Since joining the FBI, I have been involved in investigations of child exploitation matters and computer crimes against children. I am currently assigned to investigate violations of federal law involving the exploitation of children. I have gained expertise in conducting such investigations through in-person trainings, classes, and everyday work in my current role as an SA with the FBI.

2.    As a Special Agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

3.    The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and review of documents and records. This Affidavit is made in support of an application for a warrant to search the person of Isaac Spire, date of birth XX/XX/1985, (henceforth known as "SPIRE") is described in detail in Attachment A to this Affidavit, including any computer (as broadly defined in 18 U.S.C. § 1030(e)) or other digital file storage device, for the items specified in Attachment B, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of violations of 18 U.S.C. § 2252A.

4.    This investigation, described more fully below, has revealed that **SPIRE** likely utilized the BitTorrent peer-to-peer ("P2P") file-sharing network to possess and distribute child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(a)(2), and that there is probable cause to believe that evidence, fruits, and instrumentalities of such violations are located

on the person of **SPIRE**.

5.    Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me regarding this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant.

## TERMS

6.    Based on my training and experience, I use the following technical terms and definitions:

a.    An <u>Internet Protocol ("IP") address</u> is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range of 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static, or long-term, IP addresses. Other computers have dynamic, or frequently changing, IP addresses.

b.    <u>Single-source download</u> applies to a file that is downloaded from one IP address only. In P2P software, users often download different parts of the same file from many other users at once in an attempt to gain the file quicker. A single-source download comes from one user/IP address instead.

## BACKGROUND ON P2P FILE SHARING

7.    A growing phenomenon on the Internet is P2P file sharing. P2P file-sharing software is designed to allow users to trade digital files through a worldwide network that is formed by linking computers together.

8.      To access the P2P networks, a user first obtains the P2P software from the Internet. This software is used exclusively for the purpose of sharing digital files. In general, P2P software allows the user to set up file(s) on his/her computer so that the files can be shared with others running compatible P2P software. In essence, a user allows his/her computer to be searched and accessed by other users of the network. If another user finds a file of interest on his/her computer, the other user may download that file. A user obtains files by opening the P2P software on his/her computer and conducting keyword searches of the P2P network. The P2P software then conducts a search of all computers connected to that network to determine whether any files matching the search term(s) are currently being shared by any other user on that network.

9.      BitTorrent, one type of P2P software, sets up its searches by keywords, typically on torrent websites. The results of a keyword search are displayed to the user. The website does not contain the actual files being shared, only the file referred to as a ".torrent" file. The user then selects one or more .torrent files from the results for download. The .torrent files contain instructions on how a user can download the file(s) referenced in the torrent. The download of file(s) referenced by the .torrent file is achieved using a BitTorrent client/program, through a direct connection between the computer requesting the file(s) and the computer(s) sharing the actual file(s) (not the .torrent file but the actual files referenced in the .torrent file, using any BitTorrent client/program).

10.      For example, a person interested in obtaining images of child pornography would open the BitTorrent website or program on his/her computer and conduct a keyword search for files using a term such as "preteen sex." The results of the search are returned to the user's computer and displayed on the torrent site. The user then selects a .torrent from the results displayed. The .torrent file is the set of instructions a BitTorrent client/program needs to find the

files referenced in the .torrent file. Once the .torrent file is downloaded, it is used by a BitTorrent client/program, previously downloaded and installed by the user, to download the actual files. The actual file(s) are downloaded directly from the computer or computers sharing the file(s). The download is achieved via the Internet. The downloaded file(s) are then downloaded/stored in an area previously designated by the user and/or the software. The downloaded files will remain until moved or deleted.

11.     A P2P file transfer is assisted by reference to an IP address, which provides a unique location making it possible for data to be transferred between computers. The computer running the file sharing application, in this case a BitTorrent application, has an IP address assigned to it while it is on the Internet. BitTorrent users are able to see the IP address of any computer system sharing files to them or receiving files from them.

12.     Law enforcement officers using BitTorrent log the IP address which has sent the files or information regarding files being shared. Investigators can then search public records, such as ARIN, that are available on the Internet to determine the Internet service provider who has assigned that particular IP address. Based upon the IP address, investigators can obtain subscriber information from the Internet service provider. The subscriber information identifies the individual to whom the Internet service account is registered.

13.     One of the advantages of P2P file sharing is that multiple files may be downloaded in parallel. This means that the user can download more than one file at a time. In addition, a user may download parts of one file from more than one source computer at a time. For example, a BitTorrent user downloading an image file may actually receive parts of the image from multiple computers/sources. The advantage of this is that it speeds up the time it takes to download the file. However, software used by the FBI to download files from P2P networks will only download from

a single source, via a direct connection (i.e., a single source download).

14.     The computers that are linked together to form the P2P network are located throughout the world; therefore, the P2P network operates in interstate and foreign commerce. A person who shares child pornography files on a P2P network is hosting child pornography and therefore is promoting, presenting, and potentially distributing child pornography.

15.     Even though the P2P network links together computers from all over the world and users can download files, it is not possible for one user to send or upload a file to another user of the P2P network. The software is specifically designed to only allow the download of files that have been selected. A user does not have the ability to send files from his/her computer to another user's computer without their permission or knowledge. Therefore, it is not possible for one user to send or upload child pornography files to another user's computer without his/her active participation.

## BACKGROUND OF INVESTIGATION

### *CSAM has been downloaded or shared at 321 E. 9th Street*

16.     On March 9, 2024, during the course of an FBI online undercover investigation, a device, using internet protocol ("IP") address 74.197.130.42, was discovered to be in possession of and sharing files which depicted child sexual abuse material ("CSAM"). An FBI undercover employee ("UCE") directed their focus to a device using IP address 74.197.130.42 because, on March 9, 2024, it was associated with a torrent file that referenced 59 files, at least one of which had been identified as a file of interest in CSAM investigations.[1]

17.     On March 9, 2024, between 12:08 p.m. and 12:45 p.m., Central Daylight Savings Time, the FBI UCE completed single-source downloads of approximately eleven files that the

---

[1] Based on their training and experience, the UCE is familiar with P2P file-sharing, specifically the operation of the BitTorrent network.

device using IP address 74.197.130.42 was making available for others to download on the BitTorrent network. Each of the files was downloaded directly from the device using IP address 74.197.130.42. Based upon my training and experience, I determined one of the files depicted children under the age of eighteen years engaged in lascivious exhibitions of the genitals, and sexually explicit conduct, that constitutes child pornography as defined by 18 U.S.C. § 2256. One of these files are described below:

  a.       Filename: 1st Studio Siberian Mouse HD_145(SI_003).wmv

          Description: A portion of this video depicts a white prepubescent female with brown hair, her hair is pushed back with a pink headband, and she is fully naked. The girl is performing the sexual act of oral masturbation on a penis model. The video shows her performing these acts at different angles. At one point, the penis model is suction cupped to a mirror and the girl continues the oral masturbation on the penis while she is on her hands and knees on the floor. Later, the girl is lying her back on a flat surface and her vagina is exposed while she continues the oral masturbation simulation on the penis model. The length of the video was 13 minutes and 43 seconds.

      18.    Additionally, on March 9, 2024, between 12:28 p.m. and 12:56 p.m., Central Daylight Savings Time, the FBI UCE completed single-source downloads of approximately nine files that the device using IP address 74.197.130.42 was making available for others to download on the BitTorrent network. Each of the files was downloaded directly from the device using IP address 74.197.130.42. Based upon my training and experience, I determined several of these files depict children under the age of eighteen years engaged in lascivious exhibitions of the genitals, and sexually explicit conduct, that constitutes child pornography as defined by 18 U.S.C. § 2256. One of these files are described below:

  a.       Filename: 1st Studio Siberian Mouse SM_111.wmv

          Description: The video depicts three juvenile females with no clothing on. The first girl is lying on her back on a blue blanket on the floor with her vagina exposed. The second girl is kneeling on the floor at the head of the first girl on the ground and the kneeling girl is kissing the first girl on the

6

mouth and her breasts. The third girl is kneeling on the ground next to the first girl's vagina and is performing oral masturbation on the first girl's vagina, and later in the video, the anus. The length of the video is 3 minutes and 0 seconds.

19.    Subsequently, the FBI determined that Optimum was the Internet service provider ("ISP") for IP address 74.197.130.42. Pursuant to administrative subpoenas, Optimum provided the following Internet subscriber information for the IP address 74.197.130.42 for both March 9, 2024, downloads as described above:

| | |
|---|---|
| Name: | John Spire |
| Address: | 321 E 9th Street |
| | Cushing, Oklahoma 74023 |
| Phone Numbers: | 918-225-1823 |
| | 918-306-4046 |

20.    Payne County property records indicate John (John) and Emma Spire (Emma), date of birth (DOB) XX/XX/1937, own the residence. Further investigation discovered John had passed away in 2024 prior to the March 9, 2024, downloads.

21.    According to open-source records, Emma has resided at the 321 E 9th Street for approximately 20 years. Additionally, Driver's License for Emma Spire, checked on December 10, 2024, show her primary residence as the 321 E 9th Street.

22.    On November 26, 2024, the FBI installed a pole camera, which captures the public view of the 321 E 9th Street. From November 26, 2024, through December 10, 2024, the FBI has observed an adult female matching the description of Emma and approximately three males, including **SPIRE**, and a female matching the descriptions of Emma's adult children and grandchildren at the 321 E 9th Street. Additionally, the FBI has observed, via pole camera, an adult male drive or walk to a structure located south of the 321 E 9th Street on the same property.

7

*SPIRE is believed to have downloaded or shared CSAM*

23.    According to open-sourced records, **SPIRE**, DOB XX/XX/1985, is Emma Spire's

grandson.

24.    On December 6, 2024, law enforcement investigative techniques revealed

accessing of suspected CSAM associated with IP address 74.197.130.42 from approximately

10:49am to 12:55pm. Concurrently, at 10:49am, the pole camera revealed a vehicle with

Oklahoma Tag EOA030 (EOA030) parked at 321 E 9th Street along with a vehicle registered to

Emma. At 11:43am, pole camera footage revealed Emma depart in her vehicle. At 12:10pm, I

observed **SPIRE** at the residence at 321 E 9th Street. At this time, **SPIRE** was the only occupant

at 321 E 9th Street. **SPIRE** departed 321 E 9th Street driving EOA030 at 1:12pm. EOA030 is a

white Dodge Caravan registered to Mark Spire, **SPIRE's** father. Physical surveillance observed

**SPIRE** driving EOA030 on multiple occasions.

25.    In my training and experience 90-year-old females do not access CSAM. As such,

since Emma and **SPIRE** were the only ones present at **321 E 9th Street** during the time of the

aforementioned access of CSAM, using IP address 74.197.130.42, on December 6, 2024, **SPIRE**

was likely the individual who accessed the CSAM, especially since Emma was gone for a portion

of the time. Additionally, I am aware through my training and experience that individuals who

conduct illegal activity often times attempt to obfuscate their activity. The FBI assesses that the

accessing of the CSAM, by **SPIRE**, from his grandmother's residence was an attempt, on his

behalf, to conceal his activity. Furthermore, once the files were downloaded or shared as discussed

in paragraph 9,10, and 15, this would mean **SPIRE** would have had CSAM stored on a device(s)

that is in his control. Further, based on my training and experience, devices used to create, store,

share, and save CSAM are often mobile in nature, such as smart mobile devices (i.e. cell phones and tablets) and laptop computers. As such, the FBI assesses that the device or devices used to access the CSAM, as articulated above, will be in the possession of **SPIRE** or located at places to which **SPIRE** has access to, to include his person, Emma's residence, **SPIRE's** residence, and/or **SPIRE's** vehicle.

26.    According to a 2014 Oklahoma Department of Human Services Report, allegations were made by **SPIRE's** then wife that **SPIRE** previously possessed child pornography on his smart phone and laptop; however, **SPIRE** was never charged based on this allegation. The allegations indicated the CSAM involved an 8- to 9-year-old girl in bondage which is consistent with the majority age group in the CSAM discovered in the files mentioned in paragraphs 17 and 18.

27.    This investigation has identified 4204 N Oak Drive, Cushing, Oklahoma 74023 as being **SPIRE's** current physical address, and has been his current physical address as of at least August 2024.

## BACKGROUND ON DIGITAL MEDIA STORAGE DEVICES AND CHILD PORNOGRAPHY

28.    The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography.  The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years.  These drives can store thousands of images at very high resolution.  Other digital media storage devices (e.g., compact disks, digital video disks, floppy disks, cell phones, Blackberries, iPhones, thumb drives, video gaming stations, etc.) can also store tremendous amounts of digital information, including digital video and picture files.

29.    As is the case with most digital technology, communications by way of computer

can be saved or stored on the computer. Storing this information can be intentional, i.e., by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data. Further, even if deleted, forensic examination can sometimes recover files and data including deleted picture files.

30.    Computers and other digital file storage devices can store the equivalent of thousands of pages of digital information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires the searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks depending on the volume of the data stored, and it would be generally impossible to accomplish this kind of data search on site. Furthermore, I know that smart cell phones (a type of "computer," as broadly defined in 18 U.S.C. § 1030(e)) can typically "synch" with a traditional desktop or laptop computer. The purpose of synching a smart phone to a traditional computer is to back up data that is stored on the phone so that it is not permanently lost if the portable smart phone is lost or damaged. Also, smart phone users may move files off the smart phone and onto a computer to free up storage space on the smart phone. Similarly, computer (e.g., desktop computers, smart phones, etc.) users may move files off of one computer onto another computer or digital file storage devices such as a thumb drive, a DVD, an external hard drive to free up space on the computer. For this reason, I am seeking authorization

to seize all computers and digital file storage devices on the person of **SPIRE**. Finally, I know that many modern smart cell phones, including Apple iPhones and Samsung-brand phones, can be encrypted by the user using his finger and/or thumbprints or facial recognition features to lock and unlock the device. Without the user's prints or face, the devices are difficult, if not impossible, for law enforcement personnel to unlock. Accordingly, I am requesting that, to the extent law enforcement seizes any smart cell phones or other computers described in Attachment B during a search of the b (described in Attachment A), and if such device(s) feature such encryption, then law enforcement may, while executing the search warrant, depress the finger and/or thumb prints of **SPIRE** onto any such encryption feature to attempt to unlock the device or try to unlock the devices using owner's facial recognition features.

## SEARCHING COMPUTERS

31.     Searching computers for criminal evidence is a highly technical process requiring skill and a properly controlled environment. The search of a computer or computer system is an exacting scientific procedure designed to protect the integrity of the evidence and to recover hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is vulnerable to tampering or destruction, the controlled atmosphere of a laboratory is essential to complete this task. The FBI, Oklahoma City Division ("OCD"), has such a laboratory staffed with certified computer forensic examiners. At least one certified forensic examiner will be present and take custody of any computers and storage media found at the search location. All magnetic storage media will be taken to the FBI OCD lab for analysis. Identical copies of the original storage media will be produced by the assigned forensic examiner so as to maintain the integrity of the original evidence. Due to the fact that child pornography is by its nature contraband, and illegal to possess, making an image of the computer's hard drive and other storage media on site

11

is not a feasible alternative.

## CONCLUSION

32.    Based on the above information, there is probable cause to believe that the foregoing laws have been violated, and that the property, evidence, fruits, and instrumentalities of these offenses are located on the person of **SPIRE**.

33.    Based upon the foregoing, I respectfully request that this Court issue a search warrant for the person of **SPIRE**, described in Attachment A, authorizing the seizure of the items described in Attachment B to this Affidavit.

Susanna Prusak
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me this ____ day of April 2025.

SHON T. ERWIN
United States Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF PERSON TO BE SEARCHED

1. Isaac Spire is a male with date of birth XX/XX/1985.  A photograph of **SPIRE** is provided below:



## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

1.    Computer(s), as broadly defined in 18 U.S.C. § 1030(e), other digital file storage devices, computer hardware, computer software, computer related documentation, computer passwords and data security devices, videotapes, video recording devices, video recording players, and video display monitors that may be, or are used to: visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography.

2.    Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

3.    Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, distribution or accessing with the intent to view (or the attempt to do so) child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4.    In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

5.    Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic

14

messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

6.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to whose with an interest in child pornography.

8.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

9.      Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote

computer storage, and user logins and passwords for such online storage or remote computer storage.

10.    Any and all cameras, film, videotapes or other photographic equipment.

11.    Any and all visual depictions of minors engaging in sexually explicit conduct.

12.    Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

13.    Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

14.    If a smart cell phone or other computer, as described herein, is found that requires access by using a finger or thumbprint or face to unlock the device, then, while executing the search warrant, a law enforcement officer may press the finger or thumbprint of **SPIRE** onto the device to try to unlock it or use their face to unlock the device via facial recognition features.